### CONTRACT WITH AGED WOMAN NOT ENFORCIBLE.

Common Pleas Court of Hamilton County.

HARRY DICKMAN AND CHARLES H. ORTMAN, PARTNERS DOING
BUSINESS AS DICKMAN & ORTMAN, v. ISABELLA F. WOOD.

Decided, June 26, 1912.

*Specific Performance—Not Available Against an Aged Woman—Notwithstanding Absence of Fraud or Undue Influence, When—Plaintiff's Remedy an Action for Damages.*

An action for specific performance of a contract for the sale of real estate will not lie against a woman seventy-five years of age, notwithstanding her only objection to carrying out the agreement was one of sentiment in connection with the property, but the plaintiff will be relegated to an action for damages, where it appears that at the time of obtaining the contract the plaintiff knew that she was without the legal advice she was accustomed to have in connection with such transactions, and that only a minimum price was being proposed for the property, and the arrangement as to deferred payments was one which would be open to controversy, and the only damages he has sustained by reason of the breach is the loss of profits from a re-sale of the property, which can be easily ascertained in an action for damages.

*Herrlinger, Dixon & Stewart* and *W. H. Meyers,* for plaintiffs.
*Cobb, Howard & Bailey* and *Wallace Burch,* contra.

HUNT, J.

This is an action to enforce specific performance of a contract to sell real estate. Plaintiffs are builders of good credit and, in connection with such business, buy real estate, remodel or build houses thereon, and then sell for profit. The defendant has been a widow for many years, and is about seventy-six years of age, in ordinary good physical and mental health for her age, although she was under the care of a doctor at the time of the making of the contract in question. For nearly half a century defendant, with her husband during his lifetime, and since has occupied the premises, the subject-matter of this suit, with

other adjoining land used as part thereof.  ·Sons and daughters
had arrived at maturity in this home and married and left, ex-
cept one son and an orphaned granddaughter, who made her
home with the defendant, taking care of her according to her
necessities.

In July, 1908, the defendant's land having become desirable
for building lots, she entered into a contract of lease with L. R.
Smith, a real estate agent and builder, by whom the land was
subdivided, improved and sold.  Such lease included three lots
in question in this case upon which the defendant's house is
situated.  Under such lease defendant was to occupy the home
until sold.  Before *sale* she entered into an agreement with L.
R. Smith by which she was to retain the title to the home and
the three lots, exempting them from the lease and giving to L. R.
Smith a credit of $2,500 therefor upon his privilege of purchase
of the other lots.  In all the dealings of L. R. Smith with Mrs.
Wood in the obtaining of his original lease and the sale of the
lots included therein and in the different methods used to
consummate such sale and secure to defendant her interests
therein, no contract or document was signed by Mrs. Wood,
until first approved orally or in writing by her brother-in-law,
W. F. Boyd, a practicing attorney of this city.  The only excep-
tion to this custom was the contract by which Mrs. Wood ex-
cepted the homestead lots from the lease, but before this trans-
action was consummated the final documents therefor were also
submitted to Mr. Boyd.  In many instances Mr. Smith himself
took contracts to Mr. Boyd for approval before submitting them
to Mrs. Wood for signature.  Several months prior to August,
1911, Mr. Boyd died, and thereafter Wallace Burch took his
place as Mrs. Wood's legal advisor.  All this Mr. Smith knew.

The homestead was not modern and had no sewer or other
connections such as houses in the neighborhood had.  Mrs.
Wood's children were desirous that it also be sold and that Mrs.
Wood live elsewhere.  The son even put a ''For Sale'' sign on
the house.  Mrs. Wood was not, however, desirous of leaving the
old house.  Her reasons therefor were reasons of sentiment.

In August, 1911, the only person living with Mrs. Wood was
a granddaughter, a woman about thirty—the son having taken

temporary employment at Madison, Indiana. The other children visited her occasionally.

L. R. Smith on August 21, 1911, obtained from the plaintiffs a written proposition to buy defendant's house and the three lots pertaining thereto. He took the written proposition to the defendant; several interviews with her failed to secure her acceptance. He finally secured her verbal acceptance provided her son, then at Madison, Indiana, would consent. L. R. Smith telegraphed to the son urging and advising acceptance, and securing a favorable answer, went to the defendant's house on August 31, 1911, and under persuasion, notwithstanding the granddaughter's advice that the proposition be first submitted to Mrs. Wood's attorney, who was then absent from the city, secured defendant's written acceptance of plaintiffs' proposition to buy for the sum of $2,450—$450 cash and $2,000 with interest on or before one year. In this agreement the vendor agreed to convey by a general warranty deed, but there were no provisions as to security for the deferred payment of $2,000. Under the contract possession was to be given by October 1, 1911, which was afterwards extended to October 6th.

Immediately after the making of the contract, the prospect of being compelled to leave the old place which had been her home—her husband's home and her children's home for so many years—caused defendant to repent having signed the contract. The granddaughter nevertheless prepared to move and the household furniture was in process of being packed. Mrs. Wood's attorney returned to the city, and after consultation with her, declined to take the balance of the cash payment of $400, $50 having been deposited with Mr. Smith by plaintiffs when Mrs. Wood signed the contract. Defendant by her conduct and the conduct of her attorney, clearly manifested to plaintiffs her intention not to comply with the contract. Thereupon plaintiffs brought this suit for specific performance. The sum of $400 has been deposited in court and plaintiffs offer to pay, if the court so require, the $2,000 in cash. The defendant's evidence is to the effect that the property is worth from $3,000 to $3,500. Plaintiffs' evidence is to the effect that the property is worth $2,400 or $2,500.

The property is undoubtedly worth the price which the plaintiffs agreed to pay, although any value in excess of such price is largely speculative. The plaintiffs, nevertheless, manifest a great desire to acquire the property for the agreed price, although both according to the contract itself (being for the benefit of themselves or order), and from the evidence as to their business, they manifestly desire the property only for the pecuniary profit to be made in reselling it.

The written proposition of plaintiffs was left at defendant's house by the real estate agent from August 24th to August 31st, when the defendant was induced to sign it, and it is probable that another son of defendant who visited his mother during such time, was informed of said proposition. The evidence does not establish that the agent made any misrepresentations of any material facts as an inducement for Mrs. Wood to sign, but desiring to earn his commission he shows by his own evidence that he used all his persuasive powers to induce the defendant to sign while he was there and without the accustomed advice of her legal counsel. She signed the contract with the agent at her elbow and the granddaughter objecting for the reason that she realized that Mrs. Wood's attachment for the place would prevail when the agent departed. The evidence is conflicting as to whether the agent urged defendant not to wait for any advice from her attorney before signing, but the agent knew of the custom of the defendant to await the approval of her legal counsel before finally consummating any proposed transaction.

The written contract is in form an offer of the defendant to sell, an acceptance of such offer by the plaintiffs, and an agreement of the defendant to pay the agent's commission, but the fact that the contract was first signed by the plaintiffs and then brought by their agent to the defendant for the purpose of inducing her to sign, changes the apparent relation of the parties. The contract is in form the uniform sale contract adopted by the Cincinnati real estate exchange, and a question has been raised as to whether such contract is a binding contract in form, but for the purposes of this case it will be so considered.

In substance, therefore, this is a case of an aged widow, attached to her home by reason of sentiment because it had been

her home, the home of her children and deceased husband for more than a quarter of a century—although some of her children desire her to sell—accustomed in all important business transactions to first consult her legal counsel, some of her children desiring her to sell being induced in the absence of such attorney after repeated visits of a persuasive real estate agent with whom she had had dealings and who knew all these facts, to sign a contract to sell such home at a minimum market price to persons represented by such agent and who were buying it only for the profit there was in a re-sale.

The court is well aware that ordinarily contracts for the sale of real estate in the absence of fraud, misrepresentation or undue influence, or substantial inadequacy of consideration, are enforced in equity without regard to the purposes for which such real estate may be desired by the purchasers, because the market value of real estate is ordinarily such that damages for non-performance of a contract to sell are difficult to estimate at law. The court is also aware that while specific performance is discretionary with the court, such discretion is not arbitrary but must be exercised according to established equitable principles.

Nevertheless, while there has been no actual fraud in this case, and no one of the elements of undue influence, inadequacy of consideration or unfairness in term of the contract is, in itself, sufficient to authorize the court to refuse specific performance, yet the agent's knowledge of defendant's custom of obtaining legal advice with regard to such transactions, a custom which should have appealed to such agent as manifestly necessary and proper to be complied with by an old lady for her protection, in connection with the minimum price to be paid, and the possible controversy under the terms of the contract as to the security which could be retained by the vendor for deferred payments, and the further fact that it is affirmatively established in this case that by defendant's non-performance plaintiffs have been damaged only in the loss of profits of a contemplated resale, which profits under the circumstances of this case are not incapable of being fixed in an action at law, all taken together determine the equities of the case in favor of the defendant.

Counsel in their briefs have discussed many questions not herein referred to and have cited many authorities, but an examination of them, in connection with the facts found, show no reason for the application to such facts of any other than well recognized equitable principles.

Specific performance is therefore refused, leaving the plaintiffs to their legal remedy of an action for damages, in the prosecution of which, the findings herein can in no way prejudice them.